Clore v. Graham.

Josiah Clore, Plaintiff in Error, *vs.* Robert M. Graham, Defendant in Error.

1. *Conveyances—" Grant, bargain and sell"—Covenant implied by words, made on behalf of those holding subordinately and not adversely—What holding adverse.*—B having purchased of A. certain land without at the time receiving a deed, took possession and made lasting improvements; and having incumbered the land, subsequently sold it to C.; at date of which sale, on request of B. and with consent of C., and solely for their convenience, A. made to C. a deed in fee which contained the usual words "grant, bargain and sell." C. having been compelled to pay off the mortgage sued A. on his covenant against incumbrances implied in the above words. *Held,* that "all claiming under him" against incumbrances, by whom the grantor covenants to, under the statute, (Wagn. Stat., 274, § 8) in the words "grant, bargain and sell," referred to those holding subordinately and not adversely to the grantor; that B. although deriving title to the land from A. did not claim under him, but being in equity the owner of the land and entitled to a deed from A. held adversely to him (See Ridgeway vs. Holliday, 59 Mo. 444); that the intention of A. manifestly was to transfer to C. the title which he had obligated himself to make to B., and the intention and effect of his deed was not to covenant against the acts of B.

2. *Conveyances—Covenant against incumbrances—Notice to and knowledge of covenantee no discharge to covenantor, when.*—The maker of a covenant against incumbrances is not relieved from liability for such as are covered by the covenant, by the constructive notice imparted by the record to the covenantee, nor by actual knowledge on his part at the date of deed.

*Error to Daviess County Circuit Court.*

*Conover & Hicklin,* for Plaintiff in Error.

I. The evidence objected to by the plaintiff, offered by defendant to prove that there was no consideration, was illegal and incompetent. (13 Mo. 151; 1 Greenl. Ev. §§ 24, 25 and 26.)

II. The covenant against incumbrances runs with the land.

III. The fact that the plaintiff had made no contract with defendant about the land will not release defendant from liability on his covenants. (Rawle Cov., [3d. ed.] pp. 69, 70, and note 1, p. 462; Byrnes vs. Rich, 5 Gray, 518.)

IV. In order to bind the promiser (the defendant) it is not necessary that the consideration for the promise should have moved from plaintiff. (Rogers vs. Gosnell, 58 Mo. 589; Myers vs. Lowell, 44 Mo. 328; Rogers vs. Gosnell, 51 Mo. 466.)

*L. T. Collier,* for Defendant in Error.

I. The deed from Graham to Clore was procured by fraud and concealment on the part of Froman, and was executed by Graham in ignorance of the mortgage to Daviess County.

II. Although Clore knew nothing of said mortgage until after his purchase from Froman, and the execution of the deed by Graham, still, he should be regarded as affected with notice of Froman's fraud and will be bound thereby. Where one of two innocent parties must suffer, he must bear the loss who causes the injury.

III. Although it may appear from the deed in evidence that Clore is Graham's vendee, yet the petition admits that Froman was really the vendee of Graham, and Clore the vendee of Froman. And in the light of equity and the facts in the case, Clore is really and in fact the assignee of Froman, and as such, has no right to recover herein for the reason that a covenant against incumbrances does not run with the land.

IV. The deed from Graham to Clore is wholly unsupported by any consideration paid by the latter to said Graham, and appellant should look to his vendor for any loss he may have sustained by reason of Froman's fraud.

HOUGH, Judge, delivered the opinion of the court.

In the Spring of 1867, the defendant, Graham, sold certain lands in Daviess County to one Froman, who, without receiving any deed therefor, entered at once into the possession thereof, paid the purchase money and made lasting and valuable improvements.

On the 20th day of August, 1867, Froman mortgaged a portion of said lands to Daviess County to secure a note for three hundred dollars, which mortgage was duly recorded on the succeeding day.

On or about the 22d day of November, 1869, the plaintiff Clore bought said lands from Froman and paid him therefor. On the same day, the defendant Graham, not yet having made a deed to Froman, at the request of Froman and with the consent of the plaintiff, and solely for their convenience, executed and delivered directly to the plaintiff a deed in fee, which contained in the granting clause, the words "grant, bargain and sell." Froman

having failed to pay his debt to the county of Daviess, the plaintiff in August, 1873, paid the same, and thereupon brought the present suit against the defendant, for a breach of the covenant against incumbrances implied in the words "grant, bargain and sell." Neither the plaintiff nor defendant knew anything of the mortgage at the time of the conveyance.

On this state of facts the circuit court held that the plaintiff could not recover, and he has brought the case here by writ of error.

It is provided by our statute that the words "grant" "bargain," "sell," in all conveyances in which any estate of inheritance in fee simple is limited, shall, unless restrained in express terms, be construed to be express covenants, "First, that the grantor was, at the time of the execution of such conveyance, seized of indefeasible estate, in fee simple, in the real estate thereby granted; second, that such real estate was, at the time of the execution of such conveyance, free from incumbrance done or suffered by the grantor, *or any person claiming under him;* third, for further assurance of such real estate to be made by the grantor and his heirs to the grantee and his heirs and assigns," which covenant may be sued upon as if expressly inserted in the conveyance.

Whether the plaintiff has a right of action depends upon the construction to be given to the covenant against incumbrances. He claims a right of action under the last clause of that covenant.

In considering this question it may be useful, as well as interesting, to present a summary of the legislation on this subject. In the statute of 6 Anne C. 35, § 30, which first gave the effect of specific covenants to the words "grant," "bargain" and "sell;" and to which our statute is plainly traceable, the following language was employed after the covenant of seizin: "Free from all incumbrances (rent and services due to the lord of the fee only excepted) and for quiet enjoyment thereof against the bargainor, his heirs and assigns, *and all claiming under him;* and also for further assurance thereof to be made by the bargainor, his heirs and assigns, *and all claiming under him,*" etc.

In 1715 this section was substantially adopted in Pennsylvania, omitting, however, the covenant for further assurances, and expressing the covenant against incumbrances in the following language :, "Freed from incumbrances done or suffered from the grantor (excepting the rents and services due to the lord of the fee)." The Pennsylvania statute was adopted for the territory of Indiana in 1804, and in the same year it was enacted by the governor and judges of that territory, for the district of Louisiana, the words "due to the lord of the fee" being replaced by other appropriate words. (Territorial Laws Mo., Vol. 1, p. 46.)

In the Revised Statutes of 1825, the covenant against incumbrances was in the following form: "Free from incumbrances done or suffered from the bargainor or grantor, *his heirs and assigns*, and all claiming under him." The covenant against incumbrances, when not attached as a supplement to the covenant for quiet enjoyment, as is often and perhaps commonly the case in England, is universally held to be one *in presenti*, so far, at least, as the acts covenanted against are concerned ; and how a man's heirs could encumber his estate during his life, is not quite apparent. In the revision of 1835 the words "his heirs and assigns" were omitted, and the language now employed in the statute was adopted, and from that time until the present continued unchanged. It will thus be seen that the covenant for quiet enjoyment contained in all the statutes mentioned, down to 1804, has been omitted in ours, and the words "*and all claiming under him*," which followed that covenant in the Statute of Anne, have been retained, and are now annexed to the covenant against incumbrances. It will be observed also, that these words are used in the Statute of Anne, as a part of the covenants for quiet enjoyment and for further assurances, in connection with the words "heirs and assigns," from which fact it is fairly inferable, that they were intended, as there used, to apply to persons other than the heirs and assigns of the grantor.

It will not be necessary to notice the cases either in England or in this country, in which words of similar import to those used

· in our statute, have been construed by themselves, or in connection with the covenant for quiet enjoyment, as in none of them which we have examined were the relations of the parties even remotely analogous to that subsisting between the parties to the transaction now under review, and they consequently shed no light upon our inquiry.

The object of the passage of the Statute of 6 Anne, though it had but a limited territorial application, was doubtless to abridge,or rather to provide means for evading the necessity of employing,the ordinary covenants for title, which, through the ingenuity of the conveyancers, had then attained oppressively expensive proportions. The language usually employed in England to express the covenant against incumbrances, after setting forth that the grantee shall quietly enjoy, was as follows: "and that, (that is the peaceable enjoyment) freely, clearly and absolutely indemnified by the said (vendor) his heirs, executors or administrators, of, from and against all former and other estates, rights, titles, liens, charges and incumbrances whatsoever, made, created, occasioned or suffered by the said (grantor) or any other person or persons whomsoever, *rightfully claiming under or in trust for him*, or by or with his or their acts, deeds, default, privity or procurement." This covenant was oftentimes much more extended even than the foregoing. The words "rightfully claiming under, or in trust for him" are with us represented by the words "all claiming under him;" and though precision may have been in some degree sacrificed to brevity in making the change, there can be no doubt, we think, that the latter phrase was intended to fully express, and to express only, the meaning contained in the former. Argument is unnecessary to establish the proposition that the words "rightfully claiming under or in trust for him" refer only to persons holding in subordination to the right or title of the grantor, and not to those holding adversely to him. The words employed in covenants relating to land must be construed with reference to the particular nature of the covenant. The statutory covenant against incumbrances is based upon the idea that the grantor had not previously sold the land conveyed, but that he was at the time of entering into it the owner thereof, and that it may have

been incumbered by himself or by some person rightfully claiming under him some estate in the land, consistent with his own title and not hostile thereto, or some estate ·therein in trust for him. When the grantor undertakes to covenant against the title or acts of those claiming adversely to him, entirely different phraseology is employed. Froman's right to the land, it is true, was derived from Graham, but he did not claim under him within the meaning of this covenant. Being in equity the owner of the land, and entitled to a deed from Graham, he held adversely, and not in subordination, to him. (Ridgeway vs. Holliday, 59 Mo. 444.)

The purpose of Graham undoubtedly was, to transfer to Clore the title which he had obligated himself to make to Froman, and to assume only such liability as he would have assumed if he had made the conveyance to Froman. He certainly did not intend to covenant against the acts of Froman. There was no reason why he should. He did not sell the land to Clore. No consideration passed from Clore to Graham for any such undertaking. The only consideration received by Graham for his conveyance and covenants was that paid by Froman. He was simply performing his contract with Froman in making the deed to Froman's vendee. We do not mean to say that the absence of any consideration moving from Clore to Graham could be shown to affect the conveyance, or to deprive Clore of any right to relief on the covenants it contained. We are simply stating the relations of the parties. In cases where the purchase money and interest would be the measure of damages, Graham would be liable on his covenants only to the extent of the purchase money secured from Froman, not for the amount paid to Froman by Clore.

Suppose that Graham had entered into a contract with Froman to execute to him or his assigns a deed with statutory covenants upon the payment of the purchase money, and that upon a proper assignment of Froman's right to a deed to Clore, he had, through proceedings instituted for that purpose, compelled from Graham the execution of a deed to him, would the covenant against incumbrances in that case cover the acts of Froman? * * * It might with as much propriety be said that it would cover the acts

of Clore himself prior to its execution, or that if the deed had been voluntarily made by Graham, directly to Froman, the covenant would cover the incumbrance put on the land by Froman himself, prior to the date of the deed.

We have not referred to the fact that Clore was chargeable with notice of the mortgage to Daviess County by reason of its being of record, for the reason that if the covenant against incumbrances covered the acts of Froman, even actual knowledge of the existence of the incumbrance on the part of Clore would not relieve Graham from responsibility on that covenant.

The Circuit Court committed no error in holding that plaintiff was not entitled to recover, and its judgment will be affirmed; the other judges concur.