**Vern E. HILLMAN and K. Joan Hillman, Plaintiffs-Appellants,**

v.

**Leslie Ray HEDGPETH and Estia Florene Hedgpeth, Defendants-Appellants,**

and

**Lena M. Kimmons, Defendant-Respondent.**

Nos. 11156, 11166.

Missouri Court of Appeals, Southern District, Division Four.

May 27, 1980.

Benjamin J. Francka, Phillip R. Garrison, Farrington, Curtis, Knauer, Hart & Garrison, Springfield, for plaintiffs-appellants.

William A. Wear, Blythe Crist-Brown, Wear & Wear, Springfield, for defendant-respondent.

MAUS, Presiding Judge.

In this action the plaintiffs sought a judgment quieting title to and for possession of 40 acres against defendants Hedgpeth, or in the alternative for recovery upon a breach of covenants of title against their grantor, defendant Kimmons. At the close of the plaintiffs' evidence, the trial court first sustained the "motion for directed verdict" of defendant Kimmons. Then, after refusing their request to withdraw the same, the trial court sustained a similar motion of defendants Hedgpeth. The plaintiffs and defendants Hedgpeth appeal.

The property involved in this action is the Northwest Quarter of the Southeast Quarter of Section 12, Township 27, Range 23, in Christian County, the whole of which contains 40.13 acres. At one time the "old Mt. Vernon-Ozark road" entered this forty acres at the northeast corner thereof, extended west adjacent to the north boundary for a distance of approximately 700 feet, then angled southwest and left the property approximately 660 feet south of the northwest corner of that forty acres. While the date does not appear, this road beyond the southwest corner of the Delaware Cemetery (approximately 200 feet east of the northeast corner) was not used or maintained for some time before that portion was vacated by an order of the county court on March 3, 1958. The property in dispute is that part of the forty north and west of the old road and the area of the vacated road. There was a fence along the north side of the old road. There were remnants of an ancient fence along the south side of the old road, although this fence had not been "kept up" for years before 1954. After responding to an advertisement offering 40 acres for sale, the plaintiffs were shown the property by a realtor with whom it was listed. This was a brief inspection as it was wet and cold. The parties did not walk the boundaries or examine the fences. The realtor said he did not know the boundaries, but that there were 40 acres. There was no reference to the abandoned old road. A few days later the plaintiffs made an offer to the realtor of $525 per acre, a price less than that quoted to them. The realtor prepared an "Offer to Purchase with Acceptance" which was signed by Vern E. Hillman who, with her authority, also signed on behalf of his wife K. Joan Hillman, as buyers. In this instrument dated April 15, 1975, the owner is listed as Lena M. Kimmons (John Kimmons Estate) and it was signed "Lena M. Kimmons, Admx." as the seller. The property was described as 40 acres, more or less, adjacent to and south of Delaware Cemetery bordered by James River on the south, legal survey to govern. The price was recited to be $21,000, with $1,000 down and the balance on closing. This was followed by: "This is subject to probate court approval." The closing date was fixed as May 1, 1975. The conveyance was to be by general warranty deed "free and clear of all liens except as follows: None." The instrument provides for optional forfeiture of the down payment upon the buyers' failure to perform. It further provides that should the seller be unable to convey a marketable title, the sole obligation of the seller shall be to refund the down payment and pay the buyers' reasonable cost of title examination. Approximately three weeks after the execution of this instrument plaintiff Vern E. Hillman returned to the property for a second look. This time he did walk the fences and did notice the old road. He noticed no cattle and the land on either side of the road looked the same.

Closing was delayed. The abstract presented for examination covered said NW-¼ SE-¼ and was certified to July 11, 1975. The abstract discloses that this forty

had been inventoried and administered as a part of the estate of John B. Kimmons and that with the permission of the other distributees and upon the usual proceedings for the sale of real property defendant Lena M. Kimmons individually had purchased the property so described. Relevant to the issues in this case, the opinion of the attorney who examined for the plaintiffs directed their attention to instruments reflected in the abstract that unmistakably disclose the Hedgpeths' claim to the portion north and west of the old road. Plaintiff Vern E. Hillman complained to the realtor concerning this disclosure and was told the seller had 40 acres and he could "take it or leave it." Against the advice of their attorney, the plaintiffs chose to take it. The transaction was closed in the office of the realtor on August 4, 1975. The seller and the buyer were in separate rooms and there was never any direct communication between them. The balance of the purchase price was paid and the deed delivered to the plaintiffs. The deed is a general warranty deed in customary form in which defendant Kimmons is the grantor and the plaintiffs are the grantees. The description was: "The Northwest Quarter of the Southeast Quarter (NW-¼ SE¼)of Section 12, Township 27, Range 23, Christian County, Missouri". The granting clause employs the words "grant, bargain and sell" which imply the statutory covenants of title. § 442.-420 RSMo. The deed also contained the customary express covenants of seisin of "an indefeasible estate in fee", against encumbrances and to warrant and defend the title. These express covenants are followed by the typed words "Except taxes for 1975 & thereafter".

Concerning the title dispute, the abstract was admitted by agreement. Neither defendant disputes the plaintiffs' assertion that it shows a chain of title ending in the plaintiffs. However, it also shows an ambiguous conveyance pertaining to the forty in 1875 to Francis C. Howard, two affidavits made in 1972 that the portion of the forty north of the old road had been in the adverse possession of Andrew Howard and his predecessor in title Andrew Jackson

Howard for more than 50 years; and a deed dated February 10, 1972, from Andrew Howard to the defendants Hedgpeth in which the description included that portion of the 40 north of the center line of the old road. However, on the day the administratrix's deed was filed there was also filed an affidavit of two persons (one being an affiant in one of the affidavits previously referred to) that John B. Kimmons and his predecessors had been in the adverse possession of the forty and other lands for more than 31 years. The testimony concerning possession of this portion was sketchy. A surveyor certified without objection he observed some stock in "Hedgpeth's field". A witness who had known the property for 40 years testified that during that time Kimmons had used the property up to the fence on the north side of the old road and Howard and Hedgpeth used the area north of the old road and he guessed they claimed to own it.

Before proceeding to the disposition of this case, it is appropriate to review the pleadings in more detail. In their petition, entitled petition for declaratory judgment, the plaintiffs set forth a statement the action was for a declaratory judgment to determine the rights and liabilities of the parties and to determine title; alleged the execution and delivery of the deed and in general its terms; alleged that defendants Hedgpeth were in possession of the portion north of the old road and claimed title to the north half of the old road which was in possession of the plaintiffs; alleged plaintiffs had been damaged by "the retention of said property" in the amount of $5,000; and prayed for the court to determine they had title to the forty, or in the alternative determine defendant Kimmons did not have title to the part claimed by Hedgpeths and damages against Hedgpeth of $5,000. By their answer the defendants Hedgpeth admitted their possession of and claim to the area north of the old road and asserted their title to the area north of the center line by conveyance from Andrew Howard and by adverse possession by them and their predecessors; and they prayed to be

discharged from the petition. By her amended answer, defendant Kimmons admitted a warranty deed, the possession and claim of title of Hedgpeth to the area north of the old road; asserted her former title to the north half of the road by adverse possession; sought to avoid the covenants of title by an estoppel of the plaintiffs and prayed for the dismissal of the petition.

To insure that this opinion is not construed as giving approval to the form in which the plaintiffs asserted their claims, the scope of the Declaratory Judgment Act must be noted. While that act is to be interpreted liberally it " 'is not a general panacea for all real and imaginary legal ills, nor is it a substitute for all existing remedies.' " *Harris v. State Bank and Trust Company of Wellston*, 484 S.W.2d 177, 178 (Mo.1972). Compare *Buford v. Lucy*, 328 S.W.2d 14 (Mo.1959); *Glueck Realty Company v. City of St. Louis*, 318 S.W.2d 206 (Mo.1958). However, particularly where the parties have without objection entered into trial of the issues, a petition is to be construed by the substance of the pleadings. *Buford v. Lucy*, supra; 61 Am.Jur.2d Pleading § 65, p. 504. So construed, the plaintiffs' petition in a single count presents one cause of action to determine title and, in the alternative, a cause of action for the breach of covenants of title. V.A.M.R. Civil Rule 55.06(a) does permit the joinder of alternate claims, and Rule 55.06(b) provides that whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action. Rule 52.05(a) provides that all persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. In view of these rules it is doubtful that appropriate motions would have result-

ed in the dismissal of either cause of action.[1] Rather, it is probable the result would have been a petition with the first count seeking a determination of title, and in the alternative, in the event of an adverse decision on the first count, a second count for recovery for breach of the covenants. However, by their failure to object, the defendants waived their right to complain of a misjoinder of actions, Rule 55.-27(g)(1); *Dorrance v. Dorrance*, 257 Mo. 317, 165 S.W. 783 (banc 1914); and their right to complain of a misjoinder of parties defendant. *Denvir v. Park*, 169 Mo.App. 335, 152 S.W. 604 (1912). As stated, Rule 55.06 does permit the joinder of alternate claims and even though imperfectly stated, the causes of action asserted by the plaintiffs should be considered on that basis.

The claim first presented by the plaintiffs was for a determination of title. To this claim the trial court sustained a motion for a directed verdict. Rule 67.02 authorizes a motion to dismiss at the close of the plaintiffs' evidence. *Moser v. Williams*, 443 S.W.2d 212 (Mo.App.1969). But, a motion for a directed verdict at the close of the plaintiffs' evidence has no place in a court tried case. *Madget v. Jenkins*, 461 S.W.2d 768 (Mo.1970). "Such a procedure, however, is anomalous in an equity case and the effect of the motion was merely to submit the issues for decision upon the merits." *Brassfield v. Allwood*, 557 S.W.2d 674, 677 (Mo.App.1977).

The motion of defendants Hedgpeth was no doubt so considered and sustained because the trial court believed the plaintiffs had not established their title to the disputed area. Nevertheless, plaintiffs' evidence was sufficient to put title in issue and a judgment determining the respective interests of the parties should have been entered. "We have pointed out on numerous occasions that in an action to quiet title the court is required to adjudicate the respective interests of the parties to the action regardless of which party is entitled to it.

---

1. For the scope and application of Rule 55.06(a) and Rule 52.05(a) see *State ex rel. Farmers Insurance Co., Inc. v. Murphy*, 518 S.W.2d 655 (Mo. banc 1975) and *Laclede Gas Company v. Hampton Speedway Company*, 520 S.W.2d 625 (Mo.App.1975).

. . . Such declaration should be entered although plaintiff fails to establish his claim of title and the defendant does not request affirmatively an adjudication of title in him." *Pitts v. Pitts*, 388 S.W.2d 337, 339 (Mo.1965).[2] Also see *Stottle v. Brittian*, 459 S.W.2d 310 (Mo.1970). In this case, the court is not called upon to determine generally the right of a defendant to withdraw a motion to dismiss at the close of the plaintiffs' evidence. Inasmuch as the case must be remanded and a determination made of the interests of the parties, the interests of justice will be served by permitting the defendants Hedgpeth, if they desire, to present evidence of their claim in order that the court may be more fully informed. *Stottle v. Brittian*, supra.

▮ The ultimate decision upon the plaintiffs' alternative claim for breach of covenants of title is basically dependent upon the determination of title. This is not true, however, if the plaintiffs' evidence established they were not entitled to recover against defendant Kimmons even if those covenants had been breached. That defendants' motion asserted the plaintiffs were estopped from such recovery because of their knowledge of the Hedgpeth claim when the transaction was closed. It was sustained on that basis. "As a general rule, the fact that the grantee or covenantee, or the grantor or covenantor, or both, knew, at the time of the conveyance, that the grantor's title was defective or that the grantor had no title in a part or in the whole of the land does not affect the right of recovery for a breach of covenant." 21 C.J.S. Covenants § 38, p. 908. Also see III American Law of Property § 12.127, p. 460. To support an estoppel or waiver of the right to enforce the covenants, defendant Kimmons cites the terms of the contract such as "40 acres, more or less" and "legal survey to

govern" and the plaintiffs' failure to have a survey and to more fully investigate the Hedgpeth claim. Disregarding the questions of whether or not the contract signed by the administratrix was abandoned or merged in the deed and whether or not parole evidence is available to impeach the deed, there is no evidence of any express representation by the plaintiffs that they would not enforce the covenants. However, the basic thrust of defendant Kimmons' argument is that by accepting the warranty deed with knowledge of the claim, the plaintiffs impliedly represented to her they would not enforce those covenants with respect to that claim. By her warranty deed defendant Kimmons not only represented but covenanted that she owned the specifically described 40 acre tract. Under the circumstances in evidence, the acceptance of the warranty deed in which the only expressed exception to the covenants was in regard to taxes is not such a representation or waiver. There are circumstances which create an exception to the general rule.[3] However, the evidence presented by the plaintiffs does not establish such an exception. "The very purpose of the covenant is protection against defects; and to hold that one can be protected only against unknown defects would be to rob the covenant of more than one-half its value, besides destroying the force of its language. If from the force of a covenant it is desired to eliminate *known* defects, or to limit the covenant in any way, it is easy to say so." *Barlow v. Delaney*, 40 F. 97, 98 (E.D.Mo. 1889). "The fact that a grantee taking title with covenants of warranty knows that there are existing defects of title or incumbrances constituting breaches of such covenants is no defense to a suit on such covenants. It was not error, therefore, to exclude evidence tending to prove such sup-

---

2. The same principle applies in an action for a declaratory judgment. *Wm. A. Smith Contracting Co., Inc. v. Missouri Pac. R. Co.*, 575 S.W.2d 865 (Mo.App.1978).

3. The general rule was recognized but the grantee was not permitted to recover by reason of an outstanding interest created by his conduct when he owned the property prior to con-

veying the same to his grantor. *Swink v. Swink*, 367 S.W.2d 575 (Mo.1963). For discussions concerning the effect of knowledge of an encumbrance and the enforcement of a covenant against encumbrances see 21 C.J.S. Covenants § 39, p. 909; 20 Am.Jur.2d Covenants, Conditions, Etc. § 84, p. 649; 7 Thompson on Real Property § 3186, p. 306.

posed defense." *Scott v. Tanner*, 208 S.W. 264, 266 (Mo.App.1919). Also see *Clore v. Graham*, 64 Mo. 249 (1876); *Williamson v. Hall*, 62 Mo. 405 (1876); *Kellogg v. Malin*, 50 Mo. 496 (1872); *Elmore v. McNealey*, 236 S.W. 381 (Mo.App.1922); *Dudley v. Waldrop*, 183 S.W. 1095 (Mo.App.1916); *Anthony v. Rockefeller*, 102 Mo.App. 326, 76 S.W. 491 (1903). The plaintiffs' evidence did not establish defendant Kimmons cannot be held liable for a breach of covenants, if it be determined there was such a breach.

The judgment sustaining the motions for directed verdicts and dismissing the cause is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

GREENE and PREWITT, JJ., concur.