JOHN HART and WILMA HART v. T. L. WRIGHT LUMBER COMPANY, a Corporation, Appellant.—No. 39670.—196 S. W. (2d) 272.

Division One, September 9, 1946.

*Howard R. Maness* and *Chas. B. Butler* for appellant.

398

*Tedrick & Tedrick* for respondents.

VAN OSDOL, C.—Action in two counts to try and determine title, and in ejectment for possession of a narrow tract of land along the east or left bank of Current River in Ripley County. Defendant, answering, alleged its ownership of the tract, and prayed for judgment so declaring. The trial court found and adjudged plaintiffs to be the owners of land lying east of a line surveyed by a commission of surveyors, and found defendant to be the owner of land lying west of the line so surveyed. The court found plaintiffs to be entitled to the possession of the land east of the line, and ordered defendant ejected therefrom. Plaintiffs' claim for rent and damages was denied and the costs of the cause, including the cost of the survey, were taxed against defendant. Defendant has appealed.

The land involved is 110 feet in width and is situate in the north fractional half of Section 27, Township 23 North, Range 2 East, Ripley County. Current River enters Section 27 near the northwest corner thereof and flows southeastwardly through the north fractional half. Defendant is the owner of a small island in the river. See T. L. Wright Lumber Company v. Ripley County, 270 Mo. 121, 192 S. W. 996. The northern end of the island extends 400 or 450 feet upstream and opposite from the southern end of the land involved. Since about 1903, defendant has been engaged in cutting timber on lands to the northwestward (Doniphan Lumber Company had been so engaged prior to 1903) and has floated logs down Current River to defendant's mills situate to the southward; and defendant for years has been engaged in hauling gravel from the island. The island is separated from the east bank of the river by a slough known as "Island Chute." U. S. Highway No. 14 is bridged across Island Chute and the island and the river at the south end of the land in controversy.

By warranty deed from Doniphan Lumber Company, recorded July 22, 1903, defendant had acquired title to a tract of land ten feet wide commencing at the north line of the section and extending southeastwardly along the east bank of the river. The deed described the

east line of the tract as "running in an Easterly direction with the meanderings of said river *in such a way that said line shall at all times* be ten (10) feet North (east) of the said river *at all times* equally distant therefrom . . ." (Our italics.) The described narrow tract or strip of land had been conveyed to Doniphan Lumber Company by one Hicks in 1896. The tract extended to and across the present location of U. S. Highway No. 14.

By warranty deed, recorded November 21, 1929, from J. A. Thomas (junior) and Ollie W. Thomas, defendant was conveyed a strip of land "running from the north line of the right-of-way of said State Highway 42 (it is unnecessary to notice any difference in the locations of State Highway 42 and U. S. Highway No. 14), said strip being 100 feet wide and running northwardly along the East bank of Current River 1200 feet; *the west boundary of said strip being ten (10) feet east of the East bank* of Current River." (Our italics.) In the same year by warranty deed from the same grantors, but recorded January 7, 1930, defendant acquired title to land "100 feet in width being 1200 feet west (north) of the line of the said State Road and running north with the meandering of Current River to the north line of the north fractional half (½) of said Section 27, *the west line of said strip of land being 10 feet from the water's edge of said Current River."* (Our italics.)

In May 1943, plaintiffs acquired that part of the north fractional half of Section 27, east of the river and north of U. S. Highway No. 14, by warranty deed from one Day. However, the deed excepted land on the west side of the property conveyed, "being a strip 110 feet wide and lying along left bank of Current River and being adjacent thereto. It is understood that Grantor's title to this strip is in doubt and as far as same is concerned, this is intended to be a quitclaim deed." The deed further excepted lands as described in the two warranty deeds to the two hundred-foot tracts from J. A. Thomas and Ollie W. Thomas and in the warranty deed to the ten-foot tract from Doniphan Lumber Company, which three deeds we have noticed supra. About the time plaintiffs purchased their property from Day, defendant sought to ascertain the east line of its land along the river and caused a survey to be made by William M. Andrews, County Surveyor of Ripley County, who surveyed a line averaging 107.27 feet from where the river bank "breaks off," and defendant constructed a fence one foot west of the line surveyed. "It wasn't over a week" after plaintiffs bought their land.

The pleadings were so framed as to raise the issues of title and right of possession of the whole of 110 feet adjacent to the river. But the evidence narrowed the issues to those of the correct eastern line of the lands conveyed to defendant and the consequent title and right to possession of plaintiffs to land east of the line. Plaintiffs do not seriously press claim of title and right to possession of all the

land adjacent to the river. It was stipulated that J. A. Thomas (junior) and Ollie W. Thomas were the common source of the parties' titles to the two hundred-foot tracts of land. However, J. A. Thomas (junior) and Ollie W. Thomas were the devisees and, respectively, the son and widow of J. A. Thomas (senior), who died in 1927.

The trial court's judgment recited the finding that, since defendant's "title has been acquired, the East bank of Current River, where same adjoins said tract aforesaid has washed and altered and changed and that the East bank of said Island Chute has remained perceptibly the same; that defendant or its predecessor in title, constructed a fence approximately 10 feet East of the waters edge on the left or East bank" of the river. Before entering judgment, the trial court ordered a commission of surveyors to survey a line beginning on the northern boundary of the right of way of U. S. Highway No. 14 and 110 feet east of the east bank of Island Chute, the line to run northwardly parallel with the east bank of Island Chute to a point opposite the north end of the island and to the north bank of a draw, thence northwardly ▮▮▮ 100 feet east of the "fence" (mentioned in the recital of findings in the trial court's judgment quoted supra) to the north line of the section. The line accordingly surveyed is the line established by the trial court's judgment as the division or boundary line between the lands of the parties. The line varied to the east and to the west across the line of the new fence erected by defendant in 1943, with the result that about 800 square feet more area was contained west of the established line than was contained west of defendant's new fence.

Relating to the "fence," which was referred to by witnesses as "the old woven-wire fence," it will be observed more particularly infra that the evidence shows the fence was built in 1920 approximately ten feet back from the bank of the river. In the year 1917 or 1918 the defendant had driven pilings on a line extending 620 feet upstream from the north end of the island. The line of the pilings ran "about 40 feet to 65 feet" from the east bank of the river. The pilings supported a boom which arrested logs floating on the river. The boom and logs had a tendency to divert water toward the east bank of the river and down through Island Chute. A low gravel bar lying in the river west of the island extends about 1900 feet upstream from the north end of the island. The current of the river from the north end of the gravel bar to the island is against the east bank of the river. Soil has been washed from the east bank down to a point opposite the north end of the island. "Most of the washing away of the bank is where these pilings are." It is inferred the erosion of the east bank commenced in 1917 or 1918 when the pilings were driven. The east bank of the river north of the north end of the island has now become so washed that the old woven-wire fence, in places, is "on the top of the bank," and at some points the river has washed soil from be-

neath the fence, although at other points the fence is ten or more feet from the river bank.

It is contended by defendant, appellant, that the trial court erred in failing to order the surveyors to survey a line (and to render judgment establishing the line so surveyed) in accordance with the descriptions in defendant's deeds, that is, a line 110 feet from the river. (The parties, plaintiffs and defendant, seem untroubled by any possible distinction between the terms "water's edge" and "bank of Current River." See descriptions in the two Thomas deeds, supra.) Defendant has no complaint of the line established 110 feet east of the east bank of Island Chute to the point opposite the north end of the island, and to the north side of the draw; but, concerning the line from that point northwardly, defendant urges the line should have continued at the distance of 110 feet east of the bank of the river. Moreover, defendant contends, even though the line was correctly established by the trial court's judgment, the finding for plaintiffs was nevertheless erroneous, inasmuch as defendant gained about 800 square feet by the trial court's judgment—the trial court's finding and judgment, defendant says, should have been for defendant; and the costs, including surveyors' fees, taxed against plaintiffs.

 This court will review the case, an action at law tried without a jury, upon both the law and the evidence as in suits of an equitable nature. The judgment will not be set aside unless clearly erroneous, and due regard will be given to the opportunity of the trial court to judge the credibility of the witnesses. Subsection (d), Section 114, Civil Code of Missouri, Laws of Missouri 1943, p. 388.

 In our case it would seem we have for consideration questions of the construction of the three deeds whereby defendant acquired title to its lands east of the river, particularly the question of the intended effect of the language used in describing the lands conveyed; and we should review the evidence in order to ascertain if the line dividing the lands of the parties was correctly established under the facts (in harmony with the true interpretation of the deeds) by the trial court's judgment. It has been noted that the trial court grasped upon the testimony of the location of "the old woven-wire fence" as evidencing the eastern boundary of that part of defendant's ten-foot strip of land (acquired from Doniphan Lumber Company) extending northward from the north end of the island and from the north bank of the draw to the north line of the section; and the trial court in measuring 100 feet to the eastward to determine the line dividing the lands of the parties must have construed the descriptions in the two Thomas deeds as describing lands contiguous to the ten-foot strip acquired by defendant from Doniphan Lumber Company.

It is urged by defendant that, by the language of the deed from Doniphan Lumber Company describing the east line of the tract as running with the meandering of the river "in such a way that said

line shall at all times be ten (10) feet North (east) of the said river at all times equally distant therefrom,'' it was intended to convey a tract of land which, notwithstanding and to whatever extent erosion had changed the line of the river bank since the conveyance, would nonetheless continue to extend ten feet in width from the river bank. We cannot follow defendant's argument. The instrument executed by Doniphan Lumber Company was a *deed* conveying a tract of *land*. Note the difference of land, having a fixed location, to other material things, also regarded as objects of legal rights, which are of a movable character. Vol. I, Tiffany, The Law of Real Property, 3d Ed., sec. 1, p. 1. With the distinguishing characteristic of land, its immovability or fixity of location, in mind, it is plainly seen the description of the east line of the tract of land conveyed by the deed of Doniphan Lumber Company as running ''at all times'' ten feet north (east) of the river bank was the delineation of a boundary—a line indicating the limit of furthest extent of the tract conveyed. (We, of course, are not here treating with the western boundary which might be changed by the doctrines of accretion and reliction if applicable.)

Defendant further contends that, even though the evidence shows that the river has eroded the east bank since defendant acquired the ten-foot strip, the defendant nevertheless acquired title by virtue of the two Thomas deeds to land 110 feet wide adjacent to the river bank. The words of the two Thomas deeds, respectively describing the west boundary of the two hundred-foot tracts conveyed to be ten feet ''east of the East bank'' and ten feet from the ''water's edge,'' might justify defendant's contention, if the words be considered apart from the other facts in evidence; yet, considering the words in association with other facts and circumstances shown in evidence which tend to indicate the parties' intention, it is doubtful the meaning of the parties is that apparently expressed, and the facts and circumstances shown in evidence, which tend to make clear the parties' intention, demonstrate the meaning intended, we think.

It is inferred defendant's purpose in acquiring the three tracts east of the river was the control of the river bank, in order that defendant's lumber and gravel operations on the river would be protected. In purchasing the two tracts conveyed by the Thomas deeds, the defendant, of course, knew it had acquired the land described in the deed from Doniphan Lumber Company, and must have known the east bank of the river was eroding. If the words of the Thomas deeds were interpreted as contended by defendant, narrow and isolated areas of land (due to the narrowing by erosion prior to 1929 of the tract conveyed by Doniphan Lumber Company) and belonging to plaintiffs lie west of the west boundaries of the tracts conveyed by the Thomas deeds. It is seen that these areas may now lie, due to erosion, along the river bank; or such areas may hereafter become contiguous to the river bank as a result of the bank's possible

future erosion. It would not seem reasonable the parties so intended. But considering the descriptive words of the Thomas deeds in association with the parties' purpose, and with the circumstances of the Doniphan Lumber Company deed, the boundary of the tract it conveyed and the erosion of the river bank, we are of the opinion and hold that the words providing the west boundaries of the two hundred-foot tracts should be ten feet from the bank and water's edge were used in a relation and, in effect, referred to the east boundary of the tract conveyed by the deed of Doniphan Lumber Company; and that the parties (to the Thomas deeds) intended that the west boundaries of the two hundred-foot tracts conveyed should be coextensive with the east boundary of the tract conveyed by the Doniphan Lumber Company deed. The rules of interpretation of deeds are not unlike the rules of interpretation of contracts. And in considering the purpose of the parties in the execution of the Thomas deeds and the other facts and circumstances, extrinsic to the deeds but tending to show the parties' intention, we are of the opinion we have not transgressed the applicable principles of construction where, as here, an instrument construed is seen or shown by the evidence to be of doubtful meaning. See Paisley v. Lucas, 346 Mo. 827, 143 S. W. 2d 262; and Sec. 441, Clark on Surveying and Boundaries, 2d Ed., p. 529.

 But we must examine the evidence to ascertain if the eastern line of the tract conveyed by the Doniphan Lumber Company deed is so physically delineated that the eastern line of the defendant's land acquired by the Thomas deeds was (by the survey and the trial court's judgment) determined with reasonable certainty.

No physical mark or monument (other than the bank) indicating the eastern boundary of the ten-foot tract exists along the east bank of Island Chute. However, according to the evidence, the bank of the Chute has not been altered by erosion or accretion; as the trial court recited in its judgment, "the East bank of said Island Chute has remained perceptibly the same." Indeed, as we have said, defendant has no complaint of the line established 110 feet east of the east bank of Island Chute. Relating to the line to the northward from the north end of Island Chute—testimony of one Clark, who had been employed by J. A. Thomas (senior), was introduced by plaintiffs. The witness stated he had been directed by Thomas "in the Spring of 1920" to build a woven-wire fence along the east bank of the river. Thomas said to Hart, "just set it back 10 feet from river bank because Wright Lumber Company owned it." Clark testified that he set the woven-wire fence "about 10 or 12 feet back from edge of the bank of river . . . approximately 10 foot back." The evidence shows that portions of the woven-wire fence have remained intact, and, at places where the fence has fallen or has been taken down, the marks where the wires of the fence had been imbedded in trees are

yet discernible. The line of the old woven-wire fence can still be located with reasonable certainty and throughout the distance from approximately the north end of Island Chute along the bank of the river to the north line of the section.

We agree with and adopt the view of the trial court that the fence (the line of which is yet discernible) set in 1920 is of decisive significance as the monument for establishing the present division line between the lands of the parties. The statement of Thomas (senior) to Clark that "Wright Lumber Company owned it" and the direction given Clark by Thomas to set the fence "back 10 feet from river bank" were admissions that the eastern boundary of defendant's land was, in 1920, ten feet from the river bank, that is, admissions that defendant owned the land to the subsequently erected fence. And the fact that the woven-wire fence was actually erected by Clark "10 or 12 feet" or "approximately 10 foot back" from the river bank is surely evidence tending to show that the whole of defendant's land "ten feet in width" was contained west of the fence erected.

■ Attending defendant's contention of error in awarding the recovery of costs to plaintiffs—the plaintiffs were, at least, partially successful in their action (an action at law), and upon both counts of their petition. The trial court by its judgment determined the plaintiffs to be the owners of lands east of the line established by the survey, and ordered defendant ejected therefrom. Section 1409 R. S. 1939, Mo. R. S. A. sec. 1409, providing for the award of costs at the discretion of the court where any one of several counts in a petition upon any issue joined is found for the defendant, is not applicable. The fence erected by defendant was at various points over and across plaintiffs' lands, and defendant was found to be in the wrongful possession of some of plaintiffs' land. ■ Moreover, while plaintiffs lost some 800 square feet in the mean of the various areas east and west between the surveyed line and the fence erected by defendant, it has been noticed that defendant's fence was erected one foot west of the line claimed by defendant as the east line of defendant's property. Taking this into account, it was shown in evidence that plaintiffs gained "probably fifteen or sixteen hundred (square) feet." Although it is clear that plaintiffs recovered only a small portion, or small portions, of the land claimed by them, their action was successful to the extent of the recovery, and they were prevailing parties in the sense intended by statute providing that the party prevailing shall recover his costs. Section 1406 R. S. 1939, Mo. R. S. A. sec. 1406. A case holding plaintiff to be the prevailing party and entitled to recover his costs, although he was but partially successful in the action, is persuasive. Underwood v. Oregon County, 320 Mo. 514, 8 S. W. 2d 597. And see 20 C. J. S., Costs, sec. 11, p. 277 et seq.

It is suggested by defendant that the court had no authority to order a commission to make the survey of the line dividing the parties' properties and to award the costs of the survey in favor of plaintiffs, the prevailing parties. It is universally held that judgments should describe with reasonable certainty the land adjudicated therein, both in ejectment and actions to determine title. Tillman v. Hutcherson, 348 Mo. 473, 154 S. W. 2d 104. In the instant case the location of the line dividing the lands belonging to the parties was a fact necessary to the determination of the case, and to the trial court's rendition of judgment. The trial court could not with reasonable certainty determine and establish the line by the judgment without a survey or other evidence additional to that which was introduced by the parties. In such a situation, the trial court had authority to direct a commission to make a survey and by the survey determine the fact essential to a just and proper judgment. Point Prairie Hunting & Fishing Club v. Schmidt, Mo. Sup., 44 S. W. 2d 73; Williams v. Pemiscot County, 345 Mo. 415, 133 S. W. 2d 417. The survey having been ordered by the trial court and having been necessary to the determination of the cause and the rendition of a judgment, the trial court necessarily and correctly taxed the costs of the survey as costs of the cause, and in favor of the prevailing party.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.