234 S.W.2d 581 (1950)
PAHLER
v.
SCHOENHALS.
No. 41826.
Supreme Court of Missouri, Division No. 2.
November 13, 1950.
Motion for Rehearing or to Transfer to Denied December 11, 1950.
Horace Merritt, Earl C. Borchers, St. Joseph, for defendant-appellant, Ellinora Schoenhals.
Strop & Strop and Abe Goldman, St. Joseph, for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied December 11, 1950.
BARRETT, Commissioner.
In this suit to quiet title and in ejectment the plaintiff has filed a motion to dismiss the defendant's appeal for the reason that her brief does not contain a fair and concise statement of the facts with specific page references to the transcript as required by Rule 1.08. The statement is not a model but it is not so plainly a violation of the rule as to compel a dismissal of the appeal. The question involved is plainly obvious from the statement, the appeal must be reviewed anew upon both the law and the evidence and the appropriate judgment entered; Mo.R.S.A. §§ 847.114(d), 847.140(c); Hart v. T. L. Wright Lumber Co., 355 Mo. 397, 196 S.W.2d 272, and the motion to dismiss is, therefore, overruled. The essential question is whether there was such substantial evidence of the defendant's *582 title by adverse possession that the judgment should be reversed.
By the admissions of the parties and by the records, from the original patent to his last muniment of title, it was established, as between the parties to this suit, that John William Castle was the common source of title to Lot 8 and five feet off of the south side of Lot 9, Block 56, St. Joseph Extension Company Addition to the City of St. Joseph. He and his wife were living on the property on the date of his death, October 11, 1933. He left surviving his wife, Estella, and one son, William H. Castle, the plaintiff's grantor. His wife, Estella, continued living on the property until her death on September 8, 1947. On the first day of April, 1949, William and his wife conveyed the plot, by warranty deed, to the plaintiff, Louise Pahler, and she instituted this action in June 1949. As against this record title in the plaintiff the defendant contends that she has established title by adverse possession.
The defendant, Ellinora Schoenhals, is William H. Castle's aunt and Estella Castle's sister. The property involved here is known as 1719 Savannah Avenue and Mrs. Schoenhals owned and lived in the property across the street known as 1720 Savannah Avenue. She claims that in 1933, after John William Castle's death, she moved into the property at 1719 Savannah Avenue with her sister, paid the taxes, insurance and expenses of upkeep and as against her nephew, in the sixteen succeeding years, thereby acquired title by adverse possession. The nephew, William H., lived in the house with his mother in 1933 and for some time he and his wife occupied a room in the house while Mrs. Schoenhals was living there and she contends, therefore, that he had knowledge of her claim of adverse possession and of her acts of ownership, principally the payment of taxes and insurance and taking care of his mother. Dausch v. Crane, 109 Mo. 323, 19 S.W. 61; Dunlap v. Griffith, 146 Mo. 283, 47 S. W. 917.
The payment of taxes and insurance is evidence of a claim of ownership but such payment does not in and of itself establish title by adverse possession. Horton v. Gentry, 357 Mo. 694, 210 S.W.2d 72. It may be conceded that there was evidence of the defendant's occupancy of the premises and the payment of taxes and insurance, and even of some upkeep, and that these are all circumstances favorable to the defendant's case but it does not necessarily follow that they establish her title by adverse possession. Hansen v. O'Malley, 356 Mo. 908, 204 S.W.2d 281. As against the plaintiff's admittedly prima facie case, Gray v. Shelton, Mo.Sup., 282 S.W. 53, it was incumbent upon the defendant to prove that her possession for the statutory period was hostile, that is, under claim of right; actual; open and notorious; exclusive; and continuous. Allen v. Wiseman, 359 Mo. 1026, 224 S.W.2d 1010, 1012. And the test of the continuous hostility of her possession is the presence of evidence of her intention in that respect for and during the statutory period. State ex rel. Edie v. Shain, 348 Mo. 119, 123-124, 152 S.W.2d 174, 176; 2 C.J.S., Adverse Possession, § 7, page 519; Annotation 15 L.R.A.,N.S., 1178. It is in this regard, the character and degree of her intention, illustrated by the two factors hereinafter mentioned, that the defendant's cause is so lacking in substantial proof that it may not be said that she has established her claim of title by adverse possession.
In the first place, as we have said, Mr. Castle died in 1933 and thereafter, until her death in 1947, Mrs. Castle occupied the premises. Her only interest in the property and her only right to its occupancy was as the wife of the owner. As the defendant points out, her dower was never assigned to her, she never made any of the statutory elections and there was no administration on her husband's estate. Nevertheless, unassigned as they were and until barred in some manner, she had certain rights, including at least for a time, the right of occupancy and her son's title as the sole heir of the father did not mature until the expiration of those rights and that timewhatever it may have been in numerical years. Allen v. Wiseman, supra; Hunicke v. Flynn, Mo.Sup., 242 S.W. 941.
*583 The widow's rights were not legally set off to her and so it is not necessary to say what they were or how long they endured. See Moore v. Hoffman, 327 Mo. 852, 39 S.W.2d 339. She did not assign or convey any of her rights and made no effort to convey any other interest in the property and so we are not confronted with the problem of adverse possession as against a remainderman (William H. Castle) during the life estate when there is a conveyance by the life tenant. Compare annotation 112 A.L. R. 1042. The point here is that there was a period of time, after the father's death in 1933, during which the son's title did not mature and during that time it was not possible for the defendant to hold possession adversely to him. 1 Am.Jur., Sec. 25, p. 805.
This circumstance and this period of time, together with the equivocal character of her own testimony, make the fact, degree and period of her intention and hostile possession so doubtful that it can only be resolved by deferring to the trial court's finding. Hart v. T. L. Wright Lumber Co., supra; Moore v. Seabaugh, Mo.Sup., 216 S.W.2d 70; Brown v. Chapman, Mo.Sup., 163 S.W.2d 920. As we have indicated, the defendant testified on direct examination that she occupied her sister's home in 1933 and thereafter lived there, paying the taxes and insurance, and paying for certain improvements, all with her nephew's knowledge. Also as we have indicated, on the basis of her testimony on direct examination, it was a fair inference from these circumstances that she was asserting, for some period of time, ownership. On cross-examination, under her own concept of her occupancy and possession, she modified her initial testimony. As to her actual occupancy of the property at 1719 Savannah, she finally said that from 1933 to 1939 she was the only person who lived across the street in her property at 1720 Savannah. She said: "I had clothes in both houses, the two of them." As to staying at nights she said: "I was back and forth at both places." But aside from her personal notions concerning occupancy the testimony that makes doubtful her intention and the essence of hostility of possession, Landers v. Thompson, 356 Mo. 1169, 1173, 205 S.W.2d 544, 546, is that she admitted she had testified in a deposition that "The first time you really made a claim to that property was when your sister passed away." She admitted saying, in the same deposition, that "I never thought I had a right to the house at all. I was just living there. I never said nothing to anyone about anything until I was bothered." In addition, in November 1947, she filed a claim in the probate court against her sister's estate and in her claim stated that her sister owned the property. All the circumstances considered, it cannot be said upon this appeal and trial anew that the defendant established title by adverse possession. Gray v. Shelton, supra.
She insists, in addition, that the plaintiff did not sustain her burden by proving that she or her predecessor in title "was seized or possessed of the premises in question, within ten years before the commencement of such action." Mo.R.S.A. § 1002. What we have said concerning William H. Castle's title is probably sufficient to dispose of this objection. But, in addition, the plaintiff's action and prima facie case is based upon a deed preceded by a complete chain of title without any claim of adverse possession, and her suit to quiet title is based upon Mo.R.S.A. § 1684 and her action in ejectment is under Mo.R.S.A. §§ 1529, 1534 and 1536. As to the plaintiff and her cause, under this record, we are unable to apply the defendant's interpretation of Section 1002.
Upon this trial anew the judgment is affirmed.
WESTHUES and BOHLING, CC., concur.
PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.
All concur.