**Delmar L.D. HAVERKAMP, et al.,
Plaintiffs-Respondents,**

v.

**Gilbert A. BUESCHER, et al.,
Defendants-Appellants.**

No. 44987.

Missouri Court of Appeals,
Eastern District.
Division Two.

Aug. 9, 1983.

John R. Boyce, Paul M. Brown, St. Louis, for defendants-appellants.

Walter D. McQuie, Jr., Montgomery City, for plaintiffs-respondents.

SNYDER, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of Warren County, decreeing the location of the common boundary line between tracts of land owned by the parties. The judgment is remanded with directions.

Respondents' 102½ acre parcel of land was originally part of a 144 acre tract in the vicinity of Hopewell. The 102½ acres was conveyed by Gerhard and Marie Engle Hackmann to Friedrich "Fritz" Buescher in 1882. After various changes of ownership the 102½ acres of farm land was quit claimed in 1950 to Delmar L.D. and Erma Lou Haverkamp, respondents in this action.

Appellants' parcels of land were originally part of a twenty-nine acre tract. Samuel and Rosie Buescher conveyed this twenty-nine acre parcel to Florence Buescher in 1930.[1] Florence Buescher and his wife, Freda, transferred ownership of the twenty-nine acres to Charles and Amanda Krueger by general warranty deed in 1938. The Kruegers' heirs conveyed the real estate to the Aspenhof Corporation in 1970 by general warranty and quit claim deeds. The Aspenhof Corporation then conveyed 11.51 acres from the southwest portion of the twenty-nine acre tract to appellants Gilbert A. and Leona Buescher by means of warranty and quit claim deeds in 1970 and 1973. The southernmost 7.4 acres of the 11.51 acre tract was conveyed in 1978 by the Bueschers to appellant D. Shane Bunge also by means of warranty and quit claim deeds.

The parties share a common boundary which is the source of their dispute. Part of the eastern boundary of the Haverkamps' 102½ acre tract of land is also the western boundary of the Buescher and Bunge parcels of land. The common boundary line lies near Hopewell Creek, which flows generally from northwest to southeast.

A not to scale sketch is shown below as an aid to understanding the general description of the parcels and boundary in dispute. The sketch was copied from the Morsey survey, infra:

---

1. The attestation of the Warren County circuit clerk recites that Sam and Rosie *Meyer,* rather than Sam and Rosie Buescher, were the conveyors of the parcel. However, the discrepancy does not seem pertinent to this lawsuit.

Appellant Bunge and the Haverkamps also share a common corner. The respondents' southeastern corner property is also appellant Bunge's southwestern corner. This common corner is the southern terminus of the common boundary and lies near the confluence of Hopewell Creek and Dry Fork Charrette Creek. The exact location of the corner was another fact in dispute.

The disputed boundary line was first surveyed in 1849 by a Mr. Morsey, who was the Warren County surveyor, as part of a survey of the 144.1 acre parcel out of which respondents' land was later conveyed. Although Mr. Morsey's field notes contain no reference to Hopewell Creek, his plat, which was apparently not drawn to scale, shows the northern terminus of the line falling in the creek bed. The southern terminus, which is the southeastern corner of respondents' 102½ acres and Bunge's southwestern corner, is shown on the west side of the creek. The boundary line is given a bearing of south 37½° east.

The next relevant survey was performed in 1943 by Ben Fricke, who was also the Warren County Surveyor. Mr. Fricke surveyed land south of respondents' 102½

acres, but while doing so set the southeast corner of respondents' 102½ acre farm on the east bank of Hopewell Creek.

When the heirs of the Kruegers conveyed their twenty-nine acre parcel of land to the Aspenhof Corporation, the western boundary of the tract (which is also part of respondents' eastern boundary) was surveyed by Herbert W. Zuroweste, a private surveyor. This western boundary became the western boundary of appellants' tracts which is now in dispute. Mr. Zuroweste set the southwestern corner of what is now appellant Bunge's 7.4 acre tract in Hopewell Creek and gave the western boundary line a bearing of north 42° 32′ west.

After Mr. Zuroweste surveyed the tract of land, the warranty deeds in appellants' chain of title described the western boundary of the twenty-nine acres according to Zuroweste's survey instead of referring to the land owned by Fritz Buescher. Appellants Buescher and Bunge and their predecessors in interest, however, believed that Zuroweste located the disputed boundary line too far east of its actual location, thus diminishing the area conveyed by the deeds.

To correct this perceived error, the land between Zuroweste's boundary line and the east bank of Hopewell Creek was conveyed through a quit claim deed by the heirs of the Kruegers to the Aspenhof Corporation.

When the Aspenhof Corporation then conveyed part of its land to appellant Buescher, it quit claimed the land "... lying West of the West Line of the land [as established by Zuroweste], and east of the creek."

The three quit claim deeds were corrected or enlarged by three additional quit claim deeds in 1981. These three quit claim deeds quit claimed the land between the eastern boundary of the Fritz Buescher land (now the Haverkamp land) and the western boundary of the twenty-nine acre parcel as surveyed by Zuroweste.

Thus there were three different lines which denoted the disputed boundary in the conveyances from the Krueger heirs to the Aspenhof Corporation and the subsequent conveyances from Aspenhof to Buescher. The first was the Zuroweste survey straight line which lies along the creek on the east side. The second was the line described as the east bank of Hopewell Creek in the first set of quit claim deeds. (Except that Buescher quit claimed to Bunge to the center of the creek). The third was the line described as the eastern boundary of the Fritz Buescher land.

After the Haverkamps disputed the property purportedly given by appellant Buescher to appellant Bunge by a quit claim deed, the Haverkamps and Mr. Buescher agreed to have Larry Bade, the assistant county surveyor of Warren County, survey the disputed boundary line. The southeast corner of the Haverkamp tract which is also the southwest corner of the Bunge tract was located by Bade on the west bank of Hopewell Creek and the boundary line was given a bearing of north 42° 51′ 30″ west from the southeast corner. Bade's survey added the fourth possible boundary line location.

The trial court, however, discredited the Bade survey by stating that "The Bade Survey (Exhibit D) did not, by his direct testimony, commence at the northwest corner of survey 1691 because he was unable to find the monuments or witness trees referred to in the government field notes."

The description of the eastern boundary of respondents' property (part of which is the western boundary of appellants' parcels) in their chain of title is similar to Morsey's survey. The descriptions differ only in that the descriptions in the deeds refer to the northern terminus of the line as falling in a creek whereas Morsey's field notes do not refer to the creek and in that Morsey's survey was run counterclockwise from the U.S. government corner whereas the description in respondents' deed runs clockwise.[2]

2. The difference in the manner in which the surveys were run merely changes the direction of the bearings of boundary lines contained in the descriptions, e.g., north-west in Morsey's survey would be south-east in respondents' deed.

Before 1970, the deeds in appellants' chain of title described the disputed boundary line by referring to the twenty-nine acre tract as bounded on the west by land belonging to Fritz Buescher, 102½ acres of which is now the land owned by the respondent Haverkamps.

Respondents Haverkamp brought this action in January, 1979 to quiet title to the land conveyed by the quit claim deeds and to enjoin appellants from using or controlling Hopewell Creek. By alleging that the land claimed by appellants in their quit claim deeds was adverse to respondents' title, respondents claimed that the common boundary was the one established by Zuroweste. Whether respondents were alleging that the boundary described in their deed was the same as that established by Zuroweste is unclear because respondents claim title both by record title and by adverse possession.

After the trial court temporarily enjoined appellants from entering upon the disputed land, appellants answered the petition by claiming title to the land between Hopewell Creek and Zuroweste's boundary line both by adverse possession and by acquiescence in a common boundary line delineated by a fence. Appellants also counter-claimed praying the court to quiet title to the land in question in them.

The principal area in dispute is the part of Hopewell Creek south of the "water gap" which is a place, approximately 400 feet south of appellant Bueschers' north boundary, where a fence crosses from the east bank to the west bank of Hopewell Creek. Neither appellant disputed that the common north-south boundary north of the water gap is located on the east bank of Hopewell Creek.

Respondents and their witnesses testified that Mr. Haverkamp had taken gravel from and run cattle in the creek south of the water gap, that no one but respondents or their predecessors in interest ever used the creek, that Mrs. Haverkamp's father, one of the previous owners of the 102½ acre farm, always claimed the boundary was on the east side of the creek, and that Mr. Krueg-

er, a predecessor in interest of appellants, had asked permission of respondents to cut down trees in Hopewell Creek.

Neither the Haverkamps nor Mrs. Haverkamp's father ever ran cattle or cultivated the land east of Hopewell Creek and south of the water gap.

Appellant Buescher testified that he never saw respondents or their predecessors in interest make use of Hopewell Creek south of the water gap. In addition, Mr. Buescher stated that he has taken trees from the creek and today pumps water from the creek. However, Mr. Buescher also testified without objection: "Mr. Haverkamp and I agreed that the line would stay on the east bank of Hopewell Creek."

After hearing all the evidence, the trial court decreed the boundary line as follows:

Commencing on the East side of Hopewell Creek at the Southeast corner of the former Fritz Buescher property, said corner being found by reference to a survey made by Ben Fricke in 1943 and recorded in Warren County, Missouri, Surveyor's Book _____, at page _____; running thence North 37½ degrees West 1892.65 feet.

The trial court also found as a fact that the respondents were entitled to the land west of the decreed boundary line by adverse possession, and further that the parties to the suit and the defendants' predecessors in title have long acquiesced in their common boundary being the east side of Hopewell Creek.

Appellants make many allegations of trial court error. Dispositive of this appeal, however, is whether the judgment is sufficiently precise so that a sheriff may execute it without resorting to outside evidence. This court holds that the description in the judgment is not sufficiently precise.

Even under the flexible standards of appellate review enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976) this court is unable to affirm the trial court's judgment. There was substantial evidence to support a finding that the disputed boundary should be located on the

east bank of Hopewell Creek, but this court cannot establish from the judgment and record whether the boundary line designated in the trial court's decree was drawn so as to be as close as possible to the east bank of the creek. If so, there is evidence to support such a decree.

However, the judgment is not sufficiently precise to enable this court on the record to tell exactly where the boundary line falls or to enable a sheriff to locate it exactly without resorting to outside evidence.

"A verdict should so describe the land intended to be recovered as that the description copied into the writ will of itself show the sheriff the land he is to take from defendant and restore to plaintiff." *Benne v. Miller*, 149 Mo. 228, 50 S.W. 824, 829 (1899).

The description of the boundary line in the case under review is not a "clear and certain guide" to the sheriff or other interested parties. The judgment designates the corner established by Ben Fricke in 1943 as the southeast corner of respondents' property. However, only Fricke's field notes, not the survey plat itself, were in evidence and perhaps the survey is not even recorded because the judgment does not state where the survey may be found.

Furthermore, the record does not state that the corner established by Ben Fricke is marked by a monument, or that it may be located with reference to other monuments. Thus, even if Ben Fricke's survey could be found, the sheriff would have to run his own survey in order to locate Fricke's corner.

Respondents contend that Larry Bade had no trouble locating Fricke's corner on his plat and therefore the corner as described in the trial court's judgment is sufficient. First, the trial court found Bade's survey was not credible because it did not begin at an established government corner. Second, the record does not indicate whether Bade, a registered surveyor, used outside evidence to find Fricke's corner. Third, Bade's plat does not refer to any monuments by which Fricke's corner may be established. Fourth and last, because the

decree itself does not incorporate Bade's plat, Bade's plat could not be used to locate Fricke's corner without going outside the decree.

Each of the three surveys of the boundary line gives a different bearing. Morsey's survey sets the bearing at south 37½ degrees east. Bade gives the bearing as south 42° 51′ 32″ east. Zuroweste's line has a bearing of north 42° 32′ west, the decree's bearing is north 37½ degrees west.

Because no monuments or markers are given in the judgment, one cannot know which bearing system the court meant to adopt. If Morsey's bearing system is used, the line drawn by the trial court would at least be parallel to the one set out by Morsey, except that even if Morsey's bearings were intended, there is no way of knowing for certain whether the line drawn by the trial court is the same or parallel to the line drawn by Morsey because the evidence does not show whether Fricke's corner and the southeast corner established by Morsey are the same. Indeed, there is a strong inference that the two are not the same because Morsey's plat depicted the corner as lying on the west bank of Hopewell Creek while Fricke's corner, according to Bade's survey, lies on the east bank. Furthermore, the judgment does not incorporate Morsey's survey; therefore, the sheriff would have to resort to outside evidence in order to make use of and rerun Morsey's survey.

If the trial court meant to adopt the bearing system employed by either Bade or Zuroweste, the boundary line decreed by the trial court is absurd because appellants would lose a substantial amount of their property to respondents. Although respondents deride appellants' contention that the trial court's decree leaves the appellants with very little real estate as a mere "horror story," this court cannot determine whether appellants' fears are groundless.

Using the Bade survey which is the only one showing the Fricke corner, and a protractor to establish it, the trial court's described boundary line seems to run more than 200 feet east of the creek bank, taking

substantial areas from appellants east of the creek.

The trial court was faced not only with the issue of whether the boundary line in the parties' chain of title was located, but also with questions of adverse possession and acquiescence in a common boundary line. Thus, the trial court was not bound by any one surveyed line, but could also have decreed its own line depending on its resolution of all the issues.

Due to the lack of references to monuments or markers and the ambiguity surrounding the bearing system to be used, the sheriff would have to resort to outside evidence and exercise judicial discretion in locating the decreed boundary line. The judgment is therefore defective. "In a controversy such as this upon the true location of the boundary line between two landowners, such survey should have been made, such evidence taken, and such description incorporated into the judgment as would make the writ issued thereon a clear and certain guide to the officer." *Jones v. Eaton,* 307 Mo. 172, 270 S.W. 105, 110 (banc 1925). The trial court has the authority to order such a survey. See *Hart v. Wright Lumber Co.,* 355 Mo. 397, 196 S.W.2d 272, 278[8–10] (1946).

Appellants have also alleged error in the decree of the trial court because it purported to locate the east-west boundary line between the northern parcel owned by appellants Buescher and the adjoining southern parcel owned by appellant Bunge. The point is well taken.

As part of its judgment the trial court made a finding that "Defendant Bunge's west line is the southernmost 1408.21 feet of the line described in paragraphs 2 and 3 above, [the disputed common boundary line] and defendant Buescher's west line is the northernmost 484.44 feet thereof" and decreed in the last paragraph of the judgment that the Bueschers' north line runs north 52 degrees, 50 minutes east from the boundary line, that the Bueschers' south line and Bunge's north line runs north 63 degrees, 43 minutes east of the boundary line, and that

Bunge's south line runs north 59 degrees, 21 minutes east from the boundary line.

The locations of the north and south boundaries of the Buescher and Bunge parcels were not issues raised by the pleadings. There was no evidence relating to those boundaries.

"A judgment must conform not only to the evidence, but also to the pleadings. A decree outside the record issues pleaded is void." *Carlton v. Wilson,* 618 S.W.2d 731, 732[1–5] (Mo.App.1981). Upon remand the judgment should be modified to eliminate that portion describing the north and south boundaries of the Buescher and Bunge parcels.

Accordingly, the judgment of the trial court is reversed and the cause is remanded for the entry of such orders as may be necessary to render a judgment which sufficiently describes the decreed boundary line between the parties and to eliminate the findings relating to the east-west boundaries of appellants' parcels.

DOWD, C.J., and GAERTNER, J., concur.