Eddie PATTERSON, Appellant,

v.

Eldon NULL, Virgie Null, Sylvester Bates, Carol Bates, and Ronald C. Polley, Respondents.

No. 15215.

Missouri Court of Appeals, Southern District, Division One.

April 29, 1988.

---

G. Christian Blaich, Terando & Welch, Poplar Bluff, for appellant.

Donald Rhodes, Bloomfield, for respondents.

HOLSTEIN, Judge.

Plaintiff Eddie Patterson appeals from an adverse judgment in a case arising out of a long-standing dispute over the existence, width, and course of a segment of a public road. The essence of Patterson's appeal is gleaned from the first three points relied on in his brief. The trial court's judgment denied Patterson the requested relief in his petition for quiet title, injunction, and trespass and granted defendants relief on Count I of their counterclaim. The decree declared a disputed segment of road to be thirty feet in width, declared that the segment bordered on a portion of defendants' adjoining land, enjoined Patterson from erecting fences within fifteen feet of the center line of the road, and further enjoined Patterson from erecting any fence where the road borders on the adjoining land. Patterson contends the judgment is not supported by competent and substantial evidence, is against the weight of the evidence, and erroneously applies the law because, as a matter of law, the width of a road established under § 228.190,[1] as a result of public use and expenditure of public money and labor for ten years, only extends to the traveled portion of the roadway and the evidence only demonstrated that the traveled portion of the roadway was approximately thirteen feet in width. We reverse and remand.

In this court-tried case, our review is circumscribed by the rule that the decree will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We give due deference to the trial court's superior opportunity to have judged the credibility of the witnesses. Rule 73.01(c)(2).

Ray and Tessie Mae Patterson are now deceased. Tessie Mae Patterson was living and the plaintiff when the action was commenced. She died while the litigation was pending. The parties stipulated that Eddie Patterson would be substituted as plaintiff. He is the son of the deceased and is now owner of the southwest quarter of the northeast quarter and the southeast quarter of the northeast quarter of Section 18, Township 27 North, Range 8 East in Wayne County.[2] Defendants Eldon Null and Virgie Null were formerly owners of the entire north half of the northeast quarter, so that the Patterson property joined the Null property on the south. Two small tracts have been conveyed by the Nulls from the northeast quarter of the northeast quarter; one to the Bates and another to Polley.

The road in question is known as Stanley Creek Road. It begins on the west at State Highway Z. A graphic depiction of the road is shown on Appendix A.[3] Following the road from Highway Z, it enters the southwest quarter of the northeast quarter and curves in a northeasterly direction to a point approximately 320 feet west of the east boundary of the southwest quarter of the northeast quarter. From there an old road bed curves north, while the main road follows an almost due east course to its eastern terminal at a point approximately 975 feet east of the western boundary of the southeast quarter of the northeast quarter. From the latter point, the evidence is conflicting as to whether the road turns north crossing into property owned by Bates and Polley, or turns south-southeasterly eventually going off the Patterson property on the east and ending in the Mingo Game Refuge. Viewing the evidence from the perspective of the result

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1986, and all references to rules are to Missouri Rules of Court, V.A.M.R.

2. For the sake of brevity, no further reference will be made to the section, township, and range. The entire length of the road discussed lies in Section 18.

3. Appendix A is an illustration prepared under this court's direction, extracted from four plats offered in evidence and is not to scale.

reached by the trial court, we will assume the road turns north, as shown in Appendix A.

The exact location and width of that portion of the road which runs nearly directly east and west in the south half of the northeast quarter is at the crux of this litigation. Patterson claims this portion of the road runs nearly parallel to the north boundary of his property but is not on the line, leaving a narrow strip of land between the road and his northern boundary, across which defendants have been trespassing. Defendants contend the north side of that portion of the road abuts on the south boundary of their property. They contend that Patterson and others under his control have interfered with their use of the road and access to their property.

The evidence at trial indicated that the road is not in good repair and has not recently been maintained by the county. The road has followed its present course since 1954. For many years prior to 1954, the road existed but veered north and crossed the north boundary of the Patterson property and onto the land owned by Null, then in "horseshoe" fashion had curved back to the south.

The Nulls have owned the property to the north of the Patterson property since prior to the change in the route of Stanley Creek Road in the early 1950's. At that time, Eldon Null had agreed with G.W. Sweet, the Pattersons' predecessor in title, that a straightened portion of the road would be placed on the line between the north half and south half of the northeast quarter, and would consist of a thirty foot strip immediately south of Null's boundary line on the Sweet property. The new portion of the road began on the west where the "old road bed" shown on Appendix A turned north. Apparently, the road segment constructed in 1954 ended on the east where the old road curved back south onto the Patterson property and is the same point referred to in the judgment as "the

point where the roadway turns north on defendants Bates' and Polley's land."

Witness Lowell J. Faulkner served on the county court from 1951 until 1979. He recalled that Mr. Sweet came to the county court in about 1951 or 1952 suggesting that the road be straightened from where it crossed onto the Null property on the west to where it left the Null property on the east. According to Faulkner, the county court agreed with this arrangement and discussed a thirty foot right-of-way for the purpose of straightening out the road which formerly had a "horseshoe" curve in it. No written record was made of these events by the county court.

Herman Wilfong, who is now a Wayne County Commissioner, stated that as a grader operator for the county, he cut the road in about 1954 along a line of stakes which had been set up by Mr. Sweet. He laid the road out having a width of twenty-four to thirty feet from ditch line to ditch line. Wilfong stated that at the time there was a fence running along the north side of the road and as he ran the grader along the ditches, he tried to stay back a few inches so he would not disturb the fence. As was his practice, he pulled the dirt from the ditches to the center of the road, apparently to provide a slope for drainage. He was unaware where the boundary line was located.

There were no problems with the use of the road until after Patterson's parents became the owners in 1972.

In 1972, Wayne County obtained a judgment against the elder Pattersons enjoining them from interfering with the use of the road. The 1972 decree provides, in part, as follows:

The Court finds that the road in question as shown by Defendant's exhibit 1 [4] has been used by the public generally since 1952 and that Wayne County has expended funds in the upkeep and maintenance of the road continuously since that date; that the roadway was re-located in one or two places with the consent

4. Defendants' Exhibit 1 was not introduced in the record in this case. By way of brief and oral argument, we are informed that the exhibit referred to is not in the court record of the earlier case.

of the then owners of the lands over which the roadway existed; ... that at times the road bed, some 12 feet in width, was in worse condition than at other times ...

The Court further finds that the road in question as shown on Defendant's Exhibit 1 was and is a county road and is a public road and has been such since 1952 ...

WHEREFORE, it is ordered, adjudged and decreed that the temporary restraining order ... be made permanent; that defendants and all persons claiming by, through or under them, be permanently restrained and prohibited from erecting or from maintaining any sort of fence, gate or other obstruction across the roadway as described and shown on Defendant's Exhibit 1....

Since 1980, Patterson or persons acting on his behalf have attempted on separate occasions to impede the use or access of Bates and Polley to that portion of the road running nearly due east and west on or near the boundary of the two tracts. In 1980, a metal drain pipe under the road was removed and a ditch running beside the road was filled in by Patterson. In 1983, at the point where the road turns north onto the Bates and Polley property, wire and posts were erected by Patterson. After the wire and posts were removed, Patterson and a relative blocked the road with pickup trucks and stood in the road with clubs. Law enforcement officers were called to the scene to avoid any further escalation of the developing confrontation.

Thereafter, Patterson's mother filed her petition which, as amended, sought an injunction in Count I against a trespass upon the narrow strip of land she claimed to own running parallel to and on the north side of Stanley Creek Road. Count II of the petition sought to quiet title to Patterson's land. Count III sought damages for the alleged past acts of trespass by the defendants. The defendants counterclaimed seeking an injunction. Patterson, by that time substituted as plaintiff, was denied the relief requested in the petition. The defendants were granted an injunction.

The particular portions of the judgment from which Patterson appeals read as follows:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Stanley Creek Road which extends easterly from the northwest corner of the southeast quarter of the northeast quarter of section eighteen, township twenty-seven north, range eight west, Wayne County, Missouri, to the point where the said roadway turns north into Defendants Bates' and Polley's land is a thirty foot wide roadway and that the north right-of-way line of said roadway extends to and is the dividing line between Plaintiff's and Defendants' real estate, from a point beginning at the said northwest corner of the said southeast quarter of the northwest [sic—northeast?] quarter, and continuing easterly to said point where the roadway turns into Defendants Bates' and Polley's land; that said roadway is a public roadway [from Z Highway to the point where it turns north into the Bates and Polley property] ... Plaintiffs are further enjoined from constructing a fence at any point along Stanley Creek Road which would be closer than fifteen feet from the center of the roadway in either direction and Plaintiffs may not construct a fence north of the traveled portion of the roadway in the said southeast quarter of the northeast quarter, nor [block the roadway at any point]....

■ A public road may be established in three ways: (1) Under § 228.190; (2) By prescriptive use for a ten year period prior to 1887; or (3) By an implied or common law dedication. *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983); *Gover v. Cleveland*, 299 S.W.2d 239, 241 (Mo.App.1957).

Patterson's argument, without so stating, assumes that the 1972 judgment conclusively establishes that the road was established pursuant to § 228.190 and therefore precludes any determination that the road was established in any other manner.

The extent to which the 1972 judgment is conclusive in this litigation is determined

under the rules of res judicata. The rules of res judicata have developed into two classifications, traditional res judicata and collateral estoppel. *Oberle v. Monia,* 690 S.W.2d 840, 842 (Mo.App.1985).

■ In order for a party to be barred under traditional res judicata, the cause of action for the new litigation must be identical to the earlier cause of action. *Terre Du Lac Ass'n. v. Terre Du Lac, Inc.,* 737 S.W.2d 206, 212 (Mo.App.1987). The cause of action in the 1972 case was one in which the county sought an injunction against the elder Pattersons prohibiting them from placing fences, gates, or obstructions on the roadway. An injunction prohibiting blocking a roadway which does not describe the roadway operates *in personam* and does not run with the land. *Mueller v. Pittard,* 590 S.W.2d 111, 114–115 (Mo.App. 1979). In this case, Patterson has asked the court to quiet title to the southeast quarter of the northeast quarter and the southwest quarter of the northeast quarter. In performing such duty, the trial court must make a determination whether defendants, as members of the public, are entitled to use a public road running across Patterson's land and, if so, describe the course and width of the road in question. *Allen v. Smith,* 375 S.W.2d 874, 882 (Mo. App.1964). Traditional res judicata is not applicable because the cause of action in 1972 was solely an injunction proceeding, while this action includes Patterson's count seeking to quiet title.

■ Nevertheless, the doctrine of collateral estoppel or issue preclusion may apply if (1) the issue decided in the prior case was identical; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior adjudication; and (4) the party sought to be estopped had a full and clear opportunity to litigate the issue in the prior suit. *Hudson v. Carr,* 668 S.W.2d 68, 70 (Mo. banc 1984). Collateral estoppel does not reach issues which might have been litigated; only those which were necessarily and unambiguously decided. *Burton v. State,* 726 S.W.2d 497,

499 (Mo.App.1987). The only issues necessarily and unambiguously decided in the earlier case were that Stanley Creek Road had been used by the public and that public funds had been expended on the road for ten years or more. Whether part or all of the roadway may have been established under other theories of law not requiring such findings was not decided. An incidental, factual finding that the roadway was "some 12 feet in width" in the injunctive proceeding by the county to prevent the Pattersons from obstructing the public roadway does not preclude the parties in this case from seeking to establish the exact location, course, and width of a segment of the roadway, including establishing that the roadway is in fact in excess of twelve feet in width at any particular point.

■ A claim of common law dedication may prevail absent a formal dedication if there is evidence that the owner clearly showed his intent to dedicate the land for public use and that the land was accepted by the public and was so used by the public. *Hoechst v. Bangert,* 440 S.W.2d 476, 478 (Mo.1969); *City of Alexandria v. Kara Baptist Academy, Inc.,* 680 S.W.2d 416, 417 (Mo.App.1984). The dedication is not required to be accepted by governmental authority, so long as it is in fact accepted by the public as demonstrated by the use made of it, which period of use need not exceed the statute of limitations under § 516.010. *Hoechst v. Bangert, supra,* 479. Where a landowner, by words or conduct, declares his intent to dedicate a road to the use of the public and the public accepts the same by traveling along the road, the public rights are not restricted to the particular part traveled. *State v. Thompson,* 91 Mo.App. 329, 332–333 (1902).

■ From what has been said thus far, we have no problem concluding that there was substantial evidence to support a common law dedication of that portion of the road laid out by Sweet, that Sweet intended the road to be thirty feet in width, and that the north line of that road segment was immediately adjacent to the south boundary of the north half of the northeast quarter.

Patterson's petition seeks to quiet title not only to the segment of road constructed by Sweet, but also to any claims asserted by defendants, as members of the public or otherwise, to use or cross the southwest quarter of the northeast quarter. As is discernable from Appendix A, there is a portion of Stanley Creek Road running southwesterly from the western terminal of the road constructed by Sweet to the western boundary of the southwest quarter of the northeast quarter. As to that segment of roadway, there is a substantial question as to the road's course and width, not addressed in the evidence or in the trial court's judgment. The only basis supported in the record for the establishment of that segment of road is § 228.190, which provides:

> All roads in this state that have been established by any order of the county commission, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads ...

Patterson cites *Drydale v. Kiser*, 413 S.W.2d 506 (Mo.1967) and *State ex rel. Perkins v. Taylor*, 666 S.W.2d 853, 857 (Mo.App.1984), for the proposition that a public roadway established pursuant to the above-quoted statute extends only to the traveled portion of the road.

The specific question involved in both *Perkins* and *Drydale* was whether a road established by public use and expenditure of public money for ten years or longer under § 228.190 was, of necessity, thirty feet in width as provided in § 229.010. In each case, the court held that notwithstanding the language of § 229.010 that "all public roads in this state which hereafter may be established shall not be less than thirty feet in width," roadways established pursuant to § 228.190 may be less than thirty feet in width. Neither case actually held that a road so established would include only the "beaten path" and could not include adjacent ditches or berms necessar-

ily and actually used to support and maintain the traveled portion of the roadway. A careful examination of the language in *Perkins*, upon which Patterson relies states, "A public road so established extends to the traveled portion of the way." *State ex rel. Perkins v. Taylor, supra.* The language is *obiter dictum*, and apparently, without saying so, harks back to earlier cases involving roads established by user under the law in effect prior to 1887.

Prior to 1887, user alone for the prescriptive period was sufficient to establish a public road. *State ex rel. McIntosh v. Haworth*, 124 S.W.2d 653, 654 (Mo.App.1939). Many of the older cases have language similar to the following:

> If the only right [to use the road] is as the result of adverse user for the statutory period, then such right is limited to the traveled or used portion of the road.

*Hall v. Flag Special Rd. Dist.*, 296 S.W. 164, 165 (Mo.App.1927). See also *Eckerle, v. Perry*, 297 S.W. 424, 425 (Mo.App.1927); *California Special Rd. Dist. v. Bueker*, 256 S.W. 98, 99 (Mo.App.1923); *State v. Thompson, supra,* 332–333. Since the adoption of what is now § 228.190 in 1887, adverse user alone has been insufficient to establish a public roadway. *State ex rel. McIntosh v. Haworth, supra,* 655. Under the present statute, there must be an expenditure of public funds or labor and public use for the prescriptive period.

■ Because *expenditures* and *user* must be shown for the prescriptive period, it logically follows that a road established under § 228.190 extends to the traveled portion of the road and to those areas adjacent to the traveled portion upon which public labor or funds have been expended and which have been necessarily and actually used to support and maintain the road. Ditches cut parallel to the road to provide drainage fall within such areas. In addition to being logical, sound policy reasons support such rule. The landowner who has acquiesced in the public use and improvements for ten years or more will suffer no further damage by the continued maintenance and use. If adjacent drainage ditch-

es constructed with public funds are not to be included within the boundaries of the road so established, the traveled portion of the road would likely deteriorate, become impassable and, through no fault of those who rely on the road for access to their lands, unsafe or unusable.

The rule we adopt is consistent with the majority of recent decisions in other jurisdictions. See *Olson v. Bonham*, 324 N.W. 2d 260, 263 (Neb.1982); *Keidel v. Rask*, 304 N.W.2d 402, 409 (N.D.1981); *Allen v. Keeling*, 613 S.W.2d 253, 254–255 (Tex.1981); *Grenell v. Scott*, 134 So.2d 866, 869 (Fla. Dist.Ct.App.1961); *Grubb v. Teale*, 90 So. 2d 727, 731 (Ala.1956); Annotation, *Highway Width and Boundaries*, 76 A.L.R.2d 535, 548 (1961).

The evidence demonstrated that the "beaten path" of the road segment constructed by Sweet was approximately thirteen feet wide. The problem in this case is the absence of any evidence of measurements of the width of the road, including the ditches, at any point west of the road segment constructed by Sweet. If the trial court, in establishing any portion of the road's width, concluded that such portion of road was established only under § 228.190, the order declaring the road to be thirty feet wide was not supported by evidence. Where, as here, the road includes the ditches, measurements of the "beaten path" are not conclusive in determining the true width of the road in question.

 Whether the road was established under § 228.190 or by common law dedication, the judgment is defective and must be reversed. First, the judgment fails to describe, by reference to a survey or otherwise, the exact terminal point of the east end of the road segment involved. To say, as does the judgment, that the east terminal point of the road is the "point where the roadway turns into defendants Bates' and Polley's land," is tantamount to saying the road segment ends where the road segment ends. This description is so wanting in detail as to be void or unenforceable. *Allen v. Smith, supra*, 883. Second, the judgment only addresses the portion of the

roadway in the southeast quarter of the northeast quarter and does not define the location and width of the road in the southwest quarter of the northeast quarter. As previously noted, Patterson's petition seeks to quiet title to both tracts.

 When title to real estate is put in issue, as it is here, the trial court is required to adjudicate the respective interests of the parties regardless of whether the plaintiff fails to establish his claim of title and even if defendant does not affirmatively request an adjudication of title. *Hillman v. Hedgpeth*, 600 S.W.2d 625, 628–629 (Mo.App.1980). Judgments in actions to quiet title should describe with reasonable certainty the land adjudicated therein. *Hart v. T.L. Wright Lumber Co.*, 355 Mo. 397, 196 S.W.2d 272, 278 (1946); *Allen v. Smith, supra*, 882.

Because of the deficiencies noted, the judgment is reversed. There are factual questions involved in determining the eastern terminal of the road segment and the width and location of those portions of the road lying in the southwest quarter of the northeast quarter. We defer to the trial court and remand for entry of a proper judgment. The trial court need not rehear all the evidence but may, in the exercise of discretion, require additional evidence or additional surveys as to the exact location of the eastern terminal point of the road segment or measurements of the course and width of the road, including ditches. Thereafter, the trial court shall enter its judgment consistent with the principles stated in this opinion.

We also note that in the trial court's judgment, the beginning point of the road segment is described first as beginning at the "northwest corner of the southeast quarter of the *northeast* quarter" and thereafter is described as beginning at the "northwest corner of the southeast quarter of the *northwest* quarter." The second emphasized word is apparently in error. The trial court should make this correction upon remand.

Because we are reversing and remanding the case based upon matters raised in the first three points relied on, we need not

address the last three points raised in appellant's brief.

CROW, C.J., and GREENE, P.J., concur.

APPENDIX A

N ½ NE ¼

NW Corner SE¼ NE¼
2″ iron pipe

Bates and
Polley property

320′ (approx.)

Old road bed

975′ (approx.)

Stanley Creek Road